GEORGIA–FLORIDA–ALABAMA TRANSPORTATION CO., Highway Express, Inc. and Merchants Truck Line, Inc., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.

No. 79–2825.

United States Court of Appeals, Fifth Circuit.

April 4, 1980.

Gerald D. Colvin, Jr., Birmingham, Ala., Donald B. Morrison, Jackson, Miss., for petitioners.

H. Glenn Scammel, I. C. C., James P. Tuite, Atty., James C. Turner, Robert Lewis Thompson, Appellate Section, Antitrust Div., Dept. of Justice, Washington, D. C., for respondents.

Elliott Bunce, Arlington, Va., for intervenor Ryder Truck Lines, Inc.

Petition for Review of an Order of the Interstate Commerce Commission.

Before WISDOM, POLITZ and SAM D. JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

This appeal is from a decision of the Interstate Commerce Commission approving an application for temporary authority to operate as a motor carrier. We hold that the Commission's decision meets the judicial standard applicable to Commission action granting temporary authority of a motor carrier to operate.

## I.

In September 1978 Ryder Truck Lines (Ryder) filed with the Interstate Commerce Commission (ICC) an application for temporary authority to operate as a motor carrier transporting general commodities between specified points in five southern states. *See* 49 U.S.C. § 10928. After notice of the application was published in the Federal Register, Georgia-Florida-Alabama Transportation Co. (GFA) and other companies filed a protest. The ICC's district office issued a field report recommending denial of the application. On February 23, 1979, the Motor Carrier Board, an arm of the ICC designated to consider applications for temporary authority, *see* 49 C.F.R. § 1311.4(a), denied the application. The decision contained the standard reason that "[t]he evidence fails to establish there exists an immediate and urgent need for service within the territory having no carrier service available". Ryder filed a petition for reconsideration, stating that connecting line service into and out of the area had deteriorated so that Ryder had no effective means of reaching the area through connecting carriers. It submitted Approved Forms for Certification of Support of Application for Temporary Motor Carrier Authority from 224 consigners and consignees, who stated that they needed Ryder's services to relieve their immediate transportation problems. The

protestants denied Ryder's allegations. On June 5, 1979, the Vice Chairman of the ICC entered an order granting the authority, stating simply: "The petition is granted and the order of February 23, 1979, is vacated." The protestants did not receive a copy of the order, but learned of it through testimony by a Ryder employee in another proceeding. Upon request, they received a copy. Some of them filed a petition for reconsideration and to revoke, vacate, or stay operation of the order. It was denied on August 21.

■ On August 1 GFA and two other protestants filed a petition for review with this Court. They also asked for injunctive relief.[1] The Court issued a temporary injunction requiring cessation of temporary operations pending disposition of the appeal. It denied Ryder's petition for reconsideration of this order and motion to require bond.

## II.

"The scope of our review [in a temporary authority case] is narrower than it would be were we reviewing the disposition of a petition for permanent authority. The relevant standard is not whether the Commission's determination is supported by substantial evidence, but solely whether the Commission has refrained from acting in a manner that is arbitrary, capricious, or an abuse of discretion, or whether there is some evidence in the record to support the Commission's decision." *East Coast Transp. Co. v. United States*, 5 Cir. 1977, 556 F.2d 741, 742 (emphasis in original); *accord, Barnes*

*Freight Line v. ICC*, 5 Cir. 1978, 569 F.2d 912, 919–20, 921.

■ GFA complains that the agency gave no reason for its reversal of the Motor Carrier Board and notes that desire of a shipper for single-line service in lieu of existing connecting-carrier service does not warrant a grant of temporary authority. 49 C.F.R. § 1131.4(b)(4). No reason is required. "ICC proceedings on temporary authority applications need not comply with certain requirements of the Administrative Procedure Act, including the issuance of findings and conclusions." *East Texas Motor Freight Lines v. United States*, 5 Cir. 1979, 593 F.2d 691, 694. In that case this Court upheld a similarly summary ICC decision after examining a record that included 380 supporting shipper statements. A relatively recent Supreme Court decision also provides support for the ICC's decision: "While we may not supply a reasoned basis for the agency's action that the agency itself has not given, . . . we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp. v. Arkansas-Best Freight*, 1974, 419 U.S. 281, 285–86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447, 456.

■ The ICC and Ryder state that the reason for granting temporary authority should be apparent. Statements supporting the application were submitted by 224 shippers, many located in the states Ryder seeks to serve. The shippers listed six types of inadequacy, including service delays and excessive transit time, poor or unreliable ser-

---

1. In subsequent proceedings the ICC gave Ryder authority to operate in parts of Alabama and Mississippi. These grants were made under an ICC rule eliminating notification to "competing carriers and other interested parties" when a carrier files an application for emergency temporary authority. *See Notice of Elimination of Notification Procedure in the Processing of Emergency Temporary Authority Applications under 49 U.S.C. 10928*, 43 Fed. Reg. 58, 701 (Dec. 15, 1978). This Court recently held that the ICC did not properly promulgate this rule change. *Brown Express, Inc. v. United States*, 5 Cir. 1979, 607 F.2d 695. In response the ICC withdrew the new rule. *See* 44 Fed.Reg. 76, 616 (Dec. 27, 1979).

GFA asks for injunctive relief against these operations because they supposedly violate this Court's injunction. One grant of authority was made for supplemental motor carrier service in Alabama necessitated by extensive hurricane damage. This authority expired on December 21, 1979, and there is no evidence of continued operations. The other grant of authority was required because another carrier, P.C. White, Inc., ceased operations in the area. GFA has petitioned the ICC to revoke this grant of authority. Any attack in this Court must await exhaustion of administrative remedies.

vice, failure to obtain pick-up service, lost or damaged goods, the unavailability of protective heater service for freezable products, and the unavailability of needed equipment. ICC regulations allow a grant of temporary authority for single-line service "only when it is clearly established that the carriers providing multiple-line service are not capable of, or have failed in, meeting the reasonable immediate and urgent needs of shippers or receivers between the points or territories and in respect of the commodity or commodities involved". 49 C.F.R. § 1131.4(b)(4). The statements from the 224 shippers provide sufficient support for the ICC's determination that the shippers' "reasonable immediate and urgent" needs are not being met by the connecting carriers and that single-line service by Ryder is therefore necessary.

GFA asks us to follow a D.C. Circuit opinion remanding a case because of inadequate support for the agency's decision. *Barrett Mobile Home Transport v. I. C. C.,* D.C.Cir.1977, 185 U.S.App.D.C. 283, 567 F.2d 150. That case involved an application for temporary authority to operate in eight states. No supporting documents were filed for operation in three of the states, and there were substantive deficiencies in most of the 22 statements filed: "[M]ost of the statements contained only generalized expressions of discontent with the quality and timeliness of other carriers' performances." *Id.* 185 U.S.App.D.C. at 285, 567 F.2d at 152. The supporting statements here are more numerous and more specific.

■ GFA also complains that the Board based its decision on supporting statements that were nine months to one year old. The Supreme Court in *Bowman Transportation Co. v. Arkansas-Best Freight,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447, refused to remand because of delay despite a five year period between evidentiary hearings and the Commission's decision. It commented that "we have always been loath to require that factfinding begin anew merely because

of delay in proceedings of such magnitude and complexity", *id.* at 294, 95 S.Ct. at 446, and held that reopening a record was proper only in "exceptional circumstances", *id.* at 295–96, 95 S.Ct. at 446–47. Admittedly, that case involved an application for permanent authority to conduct general commodities operations. But its principles of deference to administrative procedures and the desirability of finality are relevant here. Moreover, the delay here was reasonable. The case did not reach the Commission until after preliminary decisions were made by an ICC field staff office and by the Motor Carrier Board. Protests and replies to protests were filed at each stage of the proceeding. Had these steps been bypassed, the protestants could attack the Commission's decision as contrary to its regulations and violative of due process. GFA has given us no reason to believe that the supporting statements are no longer accurate.

■ Finally, GFA contends that it was not given proper notice of the ICC's decision to grant temporary authority. The ICC admits that the protestants were inadvertently omitted from the decision's service list. GFA did receive actual notice of the decision, and filed a timely petition for reconsideration in late July 1979. The other protestants had actual notice by August 3, the date they filed for review here. They could have joined GFA's petition to the ICC. Although the 30 day appeal period had run, the agency has in the past extended the time period when parties were not given notice of a decision.[2] *See East Texas Motor Freight Lines v. United States,* 5 Cir. 1979, 593 F.2d 691, 693–94. In *East Texas Motor Freight* interested parties were not given direct notice of an ICC decision. When they informed the agency of this omission and filed motions for reconsideration, it extended the time period for administrative review. On appeal of the denial of the motions for reconsideration, this Court held: "The procedural irregularity . . . is so minor and the explanation [clerical

---

**2.** The ICC's Rules of Practice provide that procedural rules will be liberally construed, 49 C.F.R. § 1100.2, and that parties may seek relief in circumstances not covered by the Rules by filing a petition stating the reasons for relief, *id.* § 1100.99.

error] is so plausible, that we can discern no reason to vitiate the ICC's decision merely to vindicate appellants' grievances. Admittedly, procedural defaults may so taint administrative proceedings that remand would be necessary in order to preserve substantive rights and to protect the integrity of the administrative process. This case, however, does not present such egregious circumstances." *Id.* at 694.

Here, as in *East Texas Motor Freight*, we have a failure to give direct notice to interested parties. Again the failure was caused by clerical error. This inadvertent, minor, and remediable mistake does not warrant reversal or remand of this case.

Because the contentions of GFA and the other protestants have no merit, the ICC's decision is AFFIRMED and the stay issued by this Court is VACATED.